## The President &c. of the WASHINGTON BANK *versus* GEORGE W. LEWIS.
## SAME *versus* HENRY W. LINCOLN.

Where one of the directors of a bank who were authorized, when money was abund-
ant, to solicit and procure notes for discount, obtained possession of a note under the
pretence of getting it discounted for the maker, at a time when money was scarce,
and pledged it to the bank for a loan made to himself, and the maker knew that
such director was authorized by the bank to procure notes for discount only when
money was abundant, it was *held*, that the director had exceeded his authority in
such transaction, and the bank was not bound by his fraudulent conduct; and that
as he did not act in his capacity of director in procuring the discount, the bank
was not affected by his knowledge of the circumstances under which he received
the note, and might recover against the maker.

In the same case, it appeared, that the note was pledged not only as security for the
money advanced, but also for a prior existing debt due from such director, and
that the money was advanced partly for the purpose of securing the prior debt.
It was *held*, that the bank might recover of the maker the whole amount of the
note, provided it did not exceed the amount of the money advanced and the prior
debt.

THESE were actions of assumpsit brought to recover the
sum of $2500, upon a promissory note signed by the defend-
ant, Lewis, and indorsed by the defendant, Lincoln, and one
John Thompson. The note was dated October 18, 1836,
and became due on February 23, 1837.

The trial was before *Dewey* J.

The defence, as stated by the defendants, was, that on the
day of the date of the note in suit, Thompson, who was one of
the directors of the Washington Bank, called at the counting-
room of Lewis, and told him, that if he would let him have a
note, he thought the bank would discount it for him, Lewis ;
that in consequence of this application the note in suit was im-
mediately made, and indorsed and delivered to Thompson, on
the same day ; that Lewis never received any thing upon the
note, but that it was pledged by Thompson to the bank, to-
gether with another note for about $800, as collateral security
for Thompson's own note for the sum of $3000, indorsed by
John French, payable in four days, which the bank discounted
for Thompson at the time the note in suit was pledged ; that
the note for $800 had been paid to the bank ; that, the bank
being situated more than half a mile from the business part of

**the town,** it was a general practice of the directors to get notes from their acquaintances, and to carry them to the bank and procure them to be discounted for them ; and that this practice was known to all the directors.

The defendants contended, upon this statement of facts :

1. That Thompson, in getting the note of Lewis, was acting as the agent of the bank, and, therefore, that the bank must suffer the loss, if any arose from the fraudulent pledging of the note.

2. That if, in obtaining the note, Thompson was not to be considered as the agent of the bank, still, as he was one of the directors, his knowledge of the facts under which he received the note, was in law the knowledge of the whole board of directors and of the bank, and, therefore, that the bank, under these circumstances, could maintain no action against the defendants.

The defendants introduced James Cobb, as a witness, who testified, that he was clerk of Lewis in 1836 ; that Thompson had got notes discounted for Lewis, before he obtained from him the note in suit, and had frequently called and solicited notes for discount; that the witness had instruction some time before this, not to lend Thompson money, but that he had not failed when he obtained the note in suit ; and that Thompson and Lewis had been interested together in a speculation in tea.

Thompson testified, that at the time when he obtained the loan of the sum of $ 3000, he did not inform the board of directors or any officer of the bank, that the note in suit was different from other notes of Lewis which had been before indorsed by the witness and discounted, or that it was otherwise than a business note ; that shortly after he received the money, he was called on by Lewis to give security, and accordingly gave him several notes for that purpose, upon which Lewis had received about $ 1200 ; that the witness further gave to Lewis, at his request, a note for $ 2000, and dated it back on October 1, 1836, in order that he might commence an action upon it ; that a suit was brought on it by Lewis, in which Windsor Fay was summoned as a trustee ; that the witness thought, that his note was given two or three days after the note for $ 3000 became due ; that Lewis had the amount

of this money ; and that the witness had inquired of the presi-dent of the bank whether he would deliver up the notes given as collateral security to the bank, provided the note for $ 3000 was paid, and that he replied, that he should not, they being pledged for other notes.

Thompson also testified, that he had frequently used money belonging to Lewis, thus taken out, and had paid him for the use of it ; that this was implied at the time when the note in suit was taken ; that Lewis could not have obtained the dis-count at the bank at that time ; that this note was solicited not for the benefit of the bank, but for his own benefit in having the use of the money for a time ; that it was always under-stood, when money was scarce, that the witness should have the use of the money for a short time ; that in all such cases, the witness indorsed the notes and they were passed to his credit, the bank having no knowledge of such understanding ; and that the witness considered himself to be accountable to Lewis for the notes received of him.

Thompson further testified, that he used to solicit notes for the bank to be discounted, when money was very abundant ; that he was requested so to do, with an intimation that they probably might be discounted ; that sometimes the witness took the notes, and sometimes lists of them ; that when they were discounted he sometimes took the money, and sometimes it was passed to the credit of the persons for whom the dis-count was made, on the books, or they sent for it ; that the witness never engaged that any notes should be discounted, but merely stated, that he presumed they might be ; that in every instance the notes were presented to the board of di-rectors and acted upon by them ; that the witness sometimes gave a memorandum for the notes, and used very soon to account for them ; and that the charter of the bank required that its business should be transacted south of Essex street in Boston.

Daniel A. Sigourney, who was introduced as a witness by the plaintiffs, testified, that he was cashier of the bank ; that at the time when this transaction took place money was very scarce, and the bank had not money enough for their own customers or depositors ; that Fay was director for the week

when this discount was obtained ; that the witness thought, that all the directors of the bank, except one, had brought in notes to be discounted for other persons than themselves ; that it could not be inferred from the circumstance of a director's having a note in his possession, that he was the owner ; that he had known of intimations being given at meetings of the directors that it was desirable they should bring in notes to be discounted ; but that such intimations were given only when money was abundant, and the bank had a surplus above what was required by their customers ; that the witness did not recollect any such intimations being given since 1833, and was confident that none were given in 1836 or 1837 ; but that he never heard any thing said by the directors as to discontinuing the practice ; that when money was discounted for persons, who were not depositors, it was paid over sometimes to the person bringing the notes, and sometimes it was sent for by the persons to whom it belonged ; that neither Lewis nor Lincoln were customers or depositors of the bank, or at any time kept an account there ; that when directors obtained discounts for other people, the notes were not indorsed by such directors ; and that the witness did not recollect any other notes of Lewis, which were not indorsed by Thompson.

Several other witnesses testified, that Thompson, as well as other directors of the bank, had solicited and procured notes for discount for the benefit of the bank, several years previous to the transaction in question.

The plaintiffs then put into the case the writ and judgment in the action brought by Lewis against Thompson, in which Lewis recovered judgment for the sum of $ 2073 damages and costs.

The case was thereupon, by consent of the parties, taken from the jury and reserved for the determination of the whole Court ; who were to enter up judgment for the plaintiffs or for the defendants, as the law and justice of the case might require, or to grant a new trial.

*Sprague* and *Cooke*, for the plaintiffs, to the point, that Thompson was not the agent of the plaintiffs, but of Lewis, in this transaction, and that the plaintiffs were not therefore bound by his acts, cited *Wyman* v. *Hallowell and Augusta Bank,*

*March 18th*

<div style="margin-left:left">
</div>

14 Mass. R. 61 ; *Salem Bank* v. *Gloucester Bank*, 17 Mass. R. 28, 29, 30 ; *Manhattan Bank* v. *Lydig*, 4 Johns. R. 377 ; *Head* v. *Providence Ins. Co.* 2 Cranch, 127 ; *Beatty* v. *Marine Ins. Co.*, 2 Johns. R. 109 ; *Terry* v. *Capen*, 3 Day, 495 ; to the point, that Thompson's knowledge of the circumstances under which he received the note, was not to be deemed equivalent to knowledge by the plaintiffs, and could not affect them ; *Commercial Bank* v. *French*, 21 Pick. 486 ; *Wheeler* v. *Slocumb*, 16 Pick. 52 ; to the point, that it made no difference whether the note in suit was discounted, or only taken as collateral security for one that was in fact discounted, the only question being if the plaintiffs acted *bonà fide* ; Bayley on Bills, (2 Am. ed.) 113, 114, 545, 550, 551 ; *Bank of Burlington* v. *Beach*, 1 Aikens's R. 62 ; *Utica Bank* v. *Ganson*, 10 Wendell, 314 ; *Rutland Bank* v. *Buck*, 5 Wendell, 66 ; to the point, that Lewis should have notified to the bank, the misapplication of the note by Thompson, and that he had ratified the doings of Thompson as his agent, by taking security from him, &c. *Frothingham* v. *Haley*, 3 Mass. R. 70 ; *Cairnes* v. *Bleecker*, 13 Johns. R. 300.

*Fletcher* and *Sewall*, for the defendants. Thompson, in receiving and carrying this note to the bank, was the agent of the plaintiffs, and they are responsible for his fraudulent act in pledging it as collateral security. It is alleged, that nothing short of a corporate act could establish such an agency. We contend, that no vote or official act is necessary, for that purpose. The mere recognition of him as such agent, by the bank, is sufficient. Angell & Ames on Corp. 127, 156, 157, 158 ; *Canal Bridge* v. *Gordon*, 1 Pick. 308 ; *Wood* v. *Tate*, 5 Bos. & Pull. 247 ; *Magill* v. *Kauffman*, 4 Serg. & Rawle, 317 ; *Foster* v. *Essex Bank*, 17 Mass. R. 479 ; *Ridgway* v. *Farmers' Bank*, 12 Serg. & Rawle, 256.

It is said, that the directors were authorized to obtain notes for discount only when money was abundant ; but the public could know nothing of this limitation of their authority.

Thompson was a director of the bank, and therefore his knowledge of the circumstances under which the note was received, was equivalent to knowledge on the part of the plaintiffs ; Paley on Principal and Agent, 170 ; Revised Stat.

*c.* 90, § 43 ; *Mechanics' Bank* v. *Seton*, 1 Peters's Sup. ~~Washington~~
Court R. 299 ; *Foster* v. *Essex Bank*, 17 Mass. R. 498 ;          Bank
*Porthouse* v. *Parker*, 1 Campb. 82 ; and as the bank knew          Lewis
of the purpose for which the note was made by Lewis, they
had no right to receive it as collateral security.   *Evans* v.
*Kymer*, 1 Barn. & Adol. 528 ; *Wardell* v. *Howell*, 9 Wend.
170.

The bank may be affected by notice to its agent, even in a
case where the agent would not have power to bind the bank
by his acts.

Then it is contended, that the plaintiffs have a right to hold
the note in question as security for all debts due from Thomp-
son.   But it is very clear, that they have no right to take it
as collateral security for an old debt due from him.   *Bay*
v. *Coddington*, 5 Johns. Ch. R. 54 ; *S. C.* 20 Johns. R.
637 ; *Evans* v. *Smith*, 4 Binn. 366 ; *Bristol* v. *Sprague*, 8
Wendell, 423 ; *Rosa* v. *Brotherson*, 10 Wendell, 85.

It is further contended, that the acts of Thompson were
ratified by Lewis.   But he never intended to admit the pres-
ent claim of the bank, by taking security, &c. ; and in cases
of this nature every thing depends on the intention.

WILDE J. delivered the opinion of the Court.   At the   *March 25th*
trial of this cause, after all the evidence on both sides had
been introduced, the case, by consent of the parties, was tak-
en from the jury, and submitted to the whole Court, on the
report of the evidence ; it being then understood that there
was no material fact in dispute for the jury to decide.   But on
the argument of the cause, it has been contended by the de-
fendant's counsel, that there is conflicting evidence as to the
question of Thompson's agency, which requires the interven-
tion of a jury to pass upon, and that if it should so appear to
the Court, a new trial should be granted.   It is however
agreed, that the Court may decide according to the weight of
such conflicting testimony.

The defendant's counsel rest their defence on two grounds :
1. That Thompson, in procuring the note from the defendant
Lewis, was acting as the agent of the bank, and therefore that
the bank must suffer the loss, if any arose from the fraudulent
pledging of the note.   2. That if, in obtaining the note, he

Washington
Bank
*v.*
Lewis.

was not to be considered as the agent of the bank, still, as he was one of the directors of the bank which received the note as collateral security, his knowledge of the facts under which he procured the note, was in law the knowledge of the whole board of directors and the bank.

To maintain the first ground of defence, the defendant's counsel rely upon the testimony of witnesses, who stated that Thompson, as well as the other directors of the bank, had acted as the agents of the bank in soliciting and procuring notes for discount for the benefit of the bank, at such times when money was plenty, and that such a practice had continued for a number of years previous to the transaction in question.

The plaintiff's counsel object to this evidence as not admis-sible, but this objection cannot prevail, because no such ques-tion is submitted to the Court on this report; on the contrary, the case is submitted on all the evidence reported. The question whether such a usage is sufficient to bind the bank, on the ground of an implied authority, is undoubtedly open for con sideration.

Supposing then, that the usage is sufficient to bind the bank, to the extent of an express vote of the bank authorizing the directors, or any one of them, to solicit and procure notes for discount, when money was plenty; would such an author-ity to Thompson bind the bank in the present case? We think clearly, that it would not. Thompson, in such a case, would be the agent of the bank with limited authority, and if he exceeded his authority, and this was known to the party with whom he dealt, the bank would not be bound by his doings. That Thompson had no more than a limited author-ty to bind the bank, (if he had that,) clearly appears from the defendant's own showing. It was limited to times when money was plenty. When money was scarce there was no necessity for any such agency. That Lewis had knowledge of the limited extent of the supposed agency would be pre-sumed, if there were no proof directly to that point; for as he relies on usage to prove the agency, it must necessa-rily be so general as to justify the inference that it was gene-rally known. But here is abundant evidence to show, that Lewis had knowledge of the usage, and of its limitation. He

had had long dealings with Thompson and with the bank before this transaction, at times when money was scarce, and when it was plenty. This is proved by the testimony of Thompson, and is not contradicted by any other evidence. This, therefore, being a limited agency, as proved by the usage, it is clear, that Thompson was not the agent of the bank in the transaction in question.

But the case does not stop here. Thompson expressly testifies, that he did not act as the agent of the bank in soliciting and procuring the note in question ; and there is no contradictory evidence on this point. If then Thompson was the general agent of the bank, yet if he did not act as an agent, but for his own benefit, the bank would not be bound by his fraudulent conduct. There is no evidence to show, that Lewis dealt with Thompson as the agent of the bank ; but there is very strong evidence to prove the contrary and to show, that at his own request, he became the agent of Lewis to procure the discount thereof at the bank. Soon after the note was delivered to Thompson, Lewis applied to him for security, and obtained several notes on which he has received about $ 1200 ; and for the residue he has recovered judgment against Thompson. He gave no notice to the plaintiffs of the fraud of Thompson, in order that they might secure themselves, which in good faith he was bound to do, if he had considered Thompson as their agent in the transaction. There is therefore no evidence that Thompson was the agent of the bank ; and he testifies that he was not, and that in no part of the transaction did he profess to act as such an agent.

As to the second ground of defence, we think it equally clear that it cannot be sustained. The argument is, that though Thompson was not the agent of the Bank, yet, as he was a director, his knowledge of the facts under which the note was procured, is the knowledge of the bank. If this argument could be maintained, it would follow, that if a director should procure a note to be discounted by the fraudulent concealment of material facts, which he was bound to disclose, or even by false pretences, the bank would have no remedy. If Thompson had been authorized to discount this note, and did discount it, the argument might hold good.

Washington
Bank
*v.*
Lewis.

Whatever a director or other agent of a bank may do within the scope of his authority, would bind the bank so as to make them responsible to the person dealt with. But, in the present case, Thompson was the party applying for the discount, and was not acting as director, nor could he with any propriety so act. He was the party with whom the bank contracted in discounting the note, and to whom the money was paid ; and it is perfectly clear, that this ground of defence cannot be maintained. *Fulton Bank* v. *New York and Sharon Canal Co.* 4 Paige's Ch. R. 127.

There was another question raised by the defendant's counsel, which was perhaps sufficiently answered during the argument. It was argued that although the note in suit was pledged, not only as security for money advanced, but also for a prior existing debt, yet the plaintiffs are entitled to recover only the amount now due for money advanced. The cases cited do not support this position. If the security had been taken solely for the purpose of securing a prior existing debt, the cases would apply. But as the plaintiffs advanced a large sum of money partly for the purpose of securing a prior debt, they are entitled to recover the whole amount of the note, provided it does not exceed the amount due for money advanced and the prior debt for which it was pledged.

*Judgment for plaintiffs.*